UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

AUTO-OWNERS INSURANCE
COMPANY,

         Plaintiff,

   v.

JAMES FERGUSON, et al.,

         Defendants.

CIVIL ACTION NO.
1:24-CV-04065-JPB

## ORDER

This matter comes before the Court on Auto-Owners Insurance Company's ("Plaintiff") Motion for Summary Judgment [Doc. 58]. This Court finds as follows:

## BACKGROUND

**A.    Procedural History**

Plaintiff initiated this action on September 10, 2024, seeking a declaratory judgment that Amifor Management LLC ("Amifor") did not comply with preconditions for coverage in an insurance policy that Plaintiff issued to Amifor. [Doc. 1]. Plaintiff seeks a declaratory judgment that it has no duty to defend or indemnify Amifor in an ongoing state court lawsuit. Id. at 19–20.

The Complaint names all the parties to the underlying lawsuit, including Amifor, as defendants.  Id. at 1, 9.  After discovery closed, Plaintiff filed a Motion for Summary Judgment.  [Doc. 58].  Of the named defendants, only Amifor and the state court plaintiffs (together, "Defendants") filed responses in opposition to summary judgment.  [Doc. 62]; [Doc. 63].  Plaintiff then filed a reply.  [Doc. 69]. The motion is now ripe for review.

**B.    Facts**

The facts alleged in the underlying lawsuit are undisputed.  James Ferguson was at an apartment complex on June 19, 2021.  [Doc. 1-1, p. 8].  On that day, a fire occurred at the complex and caused Ferguson "catastrophic, permanent injuries."  Id.  Ferguson later sued a variety of entities related to the apartment complex for his injuries.  Id. at 3–15.  The events leading to Amifor being added as a defendant in the underlying lawsuit are the crux of the dispute in this case.

Amifor provides property management services.  [Doc. 57, p. 16].  Gordon Li is the only member and only owner of Amifor.  Id.  It is undisputed that Li provided property management services at the apartment complex during 2020 and 2021.  Id. at 114.  He helped establish the property's management software and obtained other vendors for the property.  Id. at 115–16.  Additionally, an Amifor employee was present on the property to run the day-to-day operations.  Id. at 90,

92–93.  It is further undisputed that, on the day of the fire, Li went to the apartment complex.  [Doc. 58-2, p. 3].  He communicated with the fire department, contacted an insurance broker and reported a claim to a different insurance carrier.  Id.  Within a few weeks, Li was aware that injured residents were in the hospital and even followed up with an insurance broker, stating that "residents . . . keep calling to ask [for] compensation."  [Doc. 58-16, p. 36].

Amifor's insurance policy with Plaintiff contains a clause that required Amifor to notify Plaintiff of any occurrence that "may" lead to a claim "as soon as practicable."  [Doc. 58-17, p. 43].  Despite the fire occurring in June 2021 and Li's subsequent actions in response, Amifor did not notify Plaintiff of the possibility of a claim until February 8, 2024.  [Doc. 58-2, p. 10].  Plaintiff contends that the length of this delay means that the notice was not delivered as soon as practicable and that it is thus entitled to judgment as a matter of law.  [Doc. 58-1, pp. 14–22].

Defendants do not dispute the facts about what Li knew and did following the fire.  They instead offer additional facts that they contend create a jury question on whether notice was given as soon as practicable.  According to Defendants, the ownership structure of the apartment complex is key.  The complex was owned by Forest LP, and Li held a minority ownership stake in that company.  [Doc. 62-1, p. 37].  Forest LP contracted with Yellowstone Group, LLC to be the property

manager.  Id.  Defendants point out that no formal contract existed with Amifor, and that the Amifor employee who worked at the complex was ultimately paid by Yellowstone.  Because no formal relationship existed with Amifor, Defendants contend that all of Li's actions with respect to the property were taken either in his personal capacity or as a part owner of Forest LP.

Plaintiff counters with two further undisputed facts.  Amifor's employee was still paid by Amifor—Yellowstone just reimbursed Amifor for her salary.  [Doc. 57, pp. 92–93].  Additionally, Forest LP paid a property management fee to Amifor—not Li directly—for Li's work in 2020 and 2021.  Id. at 97–98.

With the undisputed facts fleshed out, the Court turns to the law.

## ANALYSIS

### A.    Justiciability

Before turning to the merits of Plaintiff's motion, the Court addresses Amifor's[1] argument that this case is not yet ripe.  Amifor argues that any declaratory judgment at this time would be an "advisory opinion" because Amifor has not yet been found liable in the underlying lawsuit.  [Doc. 63, pp. 19–21]. Plaintiff responds that a live controversy exists because it is currently providing

---

[1] Amifor and the state court plaintiffs do not make the same set of arguments in opposition to the motion for summary judgment.  When they do make the same argument, the Court refers to the argument as made by both Defendants.

defense counsel to Amifor in the underlying lawsuit and disputes its duty to do so. [Doc. 69, pp. 15–16].

The Court agrees with Plaintiff.  "Courts have recognized a controversy exists regarding the duty to defend when the insured seeks a defense from an insurance company, but the insurance company denies that it is obligated."  See State Farm Fire and Cas. Co. v. Myrick, No. 2:06-CV-359, 2007 WL 3120262, at *2 (M.D. Ala. Oct. 23, 2007); see also Allstate Vehicle & Prop. Ins. Co. v. Jawanda, 728 F. Supp. 3d 1246, 1252 (N.D. Ga. 2024)  (concluding that the "law . . . makes clear that a dispute between the insurer and insured concerning the duty to indemnify is ripe when the insured faces litigation about his underlying liability").  Just so here.

## B.    Relevant Legal Standards

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case."  Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Ultimately, "[t]he basic issue before the court on a motion for summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Allen, 121 F.3d at 646 (quoting Anderson, 447 U.S. at 251–52).

The party moving for summary judgment bears the initial burden of showing that no genuine issue exists as to any material fact, "and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party."  Allen, 121 F.3d at 646.  Where, as here, the parties file cross-motions for summary judgment, the facts are viewed in the light most favorable to the nonmoving party on each motion.  James River Ins. Co. v. Ultratec Special Effects Inc., 22 F.4th 1246, 1251 (11th Cir. 2022).  After the movant satisfies this initial burden, the burden shifts to the nonmovant who must then present evidence indicating that summary judgment is improper.  Allen, 121 F.3d at 646.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting Anderson, 477 U.S. at 252).  If the record, taken as a whole, cannot lead "a rational

trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

Under Georgia law,[2] "insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms."  Hays v. Georgia Farm Bureau Mut. Ins. Co., 722 S.E.2d 923, 925 (Ga. Ct. App. 2012) (quoting Old Republic Union Ins. Co. v. Floyd Beasley & Sons, 551 S.E.2d 388, 390 (Ga. Ct. App. 2001)).  "Where the terms and conditions of an insurance policy are clear and unambiguous, the court simply enforces the contract according to its terms, regardless of whether doing so benefits the carrier or the insured."  Allstate Ins. Co. v. Airport Mini Mall, LLC, 265 F. Supp. 3d 1356, 1365 (N.D. Ga. 2017).  In construing an insurance policy under Georgia law, the court is required to "consider the policy as a whole, to give effect to each provision, and to interpret

---

[2] Georgia law applies to this case because the insurance contract was to be performed in Georgia.  See Interface Kanner, LLC v. JPMorgan Chase Bank, N.A., 704 F.3d 927, 932 (11th Cir. 2013) ("In diversity cases, the choice-of-law rules of the forum state determine what law governs.").  In Georgia, "interpretation of a contract [is] governed by the substantive law of the state where the contract was made, except that where the contract is made in one state and is to be performed in another state, the substantive law of the state where the contract is performed will apply."  Calhoun v. Cullum's Lumber Mill, Inc., 545 S.E.2d 41, 44 (Ga. Ct. App. 2001)

each provision to harmonize with each other." <u>ALEA London Ltd. v. Woodcock</u>, 649 S.E.2d 740, 745 (Ga. Ct. App. 2007) (citing O.C.G.A. § 13-2-2(4)).

**C.    Breach of the Notification Clause**

The insurance policy contains the following clause:

> **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**
> **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.

[Doc. 58-17, p. 43]

1.    *Construction of the Clause*

In response to Plaintiff's motion, Amifor argues that the notification clause is ambiguous.  It contends that the contract language does not expressly make compliance with the notification clause a precondition for coverage, so Plaintiff must show prejudice from the lack of notice under Georgia law.  [Doc. 63, p. 18]. This is true if a policy indeed fails to expressly identify a precondition for coverage.  <u>See</u> <u>Progressive Mt. Ins. Co. v. Bishop</u>, 790 S.E.2d 91, 94 (Ga. Ct. App. 2016).  But Amifor's argument ignores the fact that "[a] general provision that no action will lie against the insurer unless the insured has fully complied with the terms of the policy *will suffice* to create a condition precedent" under Georgia law. <u>Id.</u> (emphasis added).  The policy at issue here includes such a provision, so

compliance with the notice provision was a precondition to coverage.  [Doc. 58-17, p. 43].

The state court plaintiffs also make an argument based on the language of the clause.  They contend that the plain meaning of "claim" is "a demand for money."  [Doc. 62, p. 9].  This means, they say, that there was no claim until Amifor was sued in January 2024 and that notice in February 2024 would therefore have been timely.  Id. at 9–10.  While this definition of "claim" may be correct, this argument ignores another part of the clause's text—that the insured must notify Plaintiff of an occurrence "which *may* result in a claim."  [Doc. 58-17, p. 43] (emphasis added).  The word "may" refers to the possibility of a claim in the future.  Thus, the clause imposes a duty to notify when an *occurrence* arises that *may* later lead to a claim; a formal claim is not what triggers the duty to notify.

2.    *Knowledge*

The parties' differing views of many facts in this case boil down to whether Li's knowledge can be attributed to Amifor.  Though Li is the sole member and owner of Amifor, Defendants emphasize that Li and Amifor are separate persons under the law and that Li was simply working in a personal capacity or for another entity when it came to the apartment complex.  Plaintiff takes the opposite view, often asserting that Li's actions were Amifor's.

In the end, Plaintiff's view is closer to the correct one.  While not every action taken by Li necessarily became an action taken by Amifor, it is true that "knowledge or awareness of facts is imputed to [an] LLC through its agents." Walgreen Co. v. Peters, No. 21-CV-2522, 2024 WL 50379, at *12 (N.D. Ill. Jan. 4, 2024).  It is undisputed that Li had knowledge of when the fire occurred, and neither Amifor nor the state court plaintiffs explain why that knowledge was not imputed to Amifor as a matter of law.  To the extent Amifor argues that notice was timely because Amifor lacked knowledge until it was sued, that argument fails. [Doc. 63, p. 12].

3.   *Reasonability & Excuse*

Next, Amifor points out that the policy's notification clause says that notice must be given as soon as practicable.  It contends that whether the notice here was given as soon as practicable is a question for a factfinder.  That is the general rule under Georgia law.  JNJ Found. Specialists, Inc. v. D.R. Horton, Inc., 717 S.E.2d 219, 225 (Ga. Ct. App. 2011).  However, courts applying Georgia law have routinely found that delays in providing notice that are four months and longer are unreasonable as a matter of law.  Airport Mini Mall, 265 F. Supp. 3d at 1378 (collecting cases).

Even though a delay may be unreasonable in the abstract, an insured may still "be able to present evidence of excuse or justification for the delay." Plantation Pipeline Co. v. Royal Indem. Co., 537 S.E.2d 165, 167 (Ga. Ct. App. 2000) (quoting Richmond v. Georgia Farm Bureau Mut. Ins. Co., 231 S.E.2d 245, 249 (Ga. Ct. App. 1976)).  Defendants contend that deciding whether an insured's explanation for a delay is sufficient is a question ordinarily reserved for the jury. [Doc. 62, p. 10]; [Doc. 63, p. 11].  They further contend that the delay was reasonable here.  They point to cases where long notification delays did not result in summary judgment because the insured reasonably believed that no claim would be brought against it.  See JNJ Found. Specialists, Inc., 717 S.E.2d 219; Guar. Nat'l Ins. Co. v. Brock, 474 S.E.2d 46 (Ga. Ct. App. 1996).  They argue that, because Li was a part owner of the other companies that owned and managed the apartment complex, he—and by extension, Amifor—had no reason to think that Amifor would have a claim brought against it.  They argue that this at least creates a fact question to be decided by a jury.  [Doc. 62, pp. 13–15]; [Doc. 63, p. 12].

Plaintiff responds that summary judgment is still appropriate on this question.  Courts may find, "under all of the facts and circumstances of a particular case, that an insured's delay in giving notice . . . was unjustified and unreasonable as a matter of law."  Plantation Pipeline Co., 537 S.E.2d at 167 (citation modified).

Plaintiff contends that the facts show that Amifor was so heavily involved in managing the apartment complex that it should have known a claim could be brought against it such that its excuse was not reasonable as a matter of law.  [Doc. 69, pp. 5–8].

The Court agrees with Plaintiff.  Li was actively involved with the management and operation of the property in 2020 and 2021.  [Doc. 57, p. 114]. Though it contends Li performed this work in a non-Amifor capacity, Amifor was paid for his services in both years.  Id. at 97–98.  Additionally, an Amifor employee was the onsite property manager providing day-to-day management services at the apartment complex.  Id. at 90, 92–93.  When the complex was sold in 2022, Amifor was reimbursed by Forest LP for the pay of various expenses and salaries that Amifor had paid in the meantime.  Id. at 45, 106–07.  While this may not have been a traditional apartment management arrangement, there is no doubt that Amifor's personnel and assets were involved in managing the complex. Unlike cases where insured entities were unaware of the lawsuit or had no reason to expect they would be sued, Amifor both knew of the fire and was involved in managing the apartment.  It should have known it might be sued as a result.

Amifor contends that Li had other interests in the complex, that the payments to Amifor were really meant to compensate Li individually and that the

Amifor employee was paid for by Yellowstone and only remained an Amifor employee to receive health insurance.  Id. at 29; [Doc. 62, pp. 14–15]; [Doc. 63, p. 12].

Perhaps these arguments could ultimately help Amifor avoid liability.  The question before the Court, however, is not whether Amifor is liable.  Instead, the Court must determine whether a jury question exists as to the reasonability of Amifor's belief that it would likely not have a claim brought against it.  Under all the circumstances, the Court finds that Amifor's excuse for the delay in notifying Plaintiff it fails as a matter of law.  Amifor's involvement at the apartment complex was extensive.  Regardless of whether Amifor meant to be involved or to formally manage the apartment complex, its owner and employee were actively providing management services.  Amifor was reimbursed for expenses and paid for those services.  Under these circumstances, a reasonable person would have known that the fire could result in a claim against Amifor.  Summary judgment is therefore appropriate.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment, [Doc. 58], is **GRANTED**.  The Court hereby **DECLARES** that Plaintiff does not owe

Defendants[3] any coverage obligation with respect to any claim arising from the June 19, 2021, fire because Amifor did not comply with the notification clause of the insurance policy.

     **SO ORDERED** this 12th day of February, 2026.

                              **J. P. BOULEE**
                              United States District Judge

---

[3] This declaratory judgment binds the Defendants who have appeared in this action—Amifor, James Ferguson, Sandra Ferguson, Al Turab LLC and Tameer Capital LLC. [Doc. 7]; [Doc. 8]; [Doc. 38]. Several other Defendants have been served but have not appeared. Plaintiff has not, however, obtained a clerk's entry of default against them nor filed a motion for default judgment. Accordingly, Plaintiff is **ORDERED** to show cause within 7 days of the date of this Order why those Defendants should not be dismissed for failure to obtain entry of default and to move for default judgment.